RIKER *v.* LEO *et al.*

(*Supreme Court, General Term, First Department.* May 18, 1888.)

1. WILLS — CONSTRUCTION — DESCRIPTION OF LEGATEES — SOCIETY FOR AMELIORATING CONDITION OF JEWS AT JERUSALEM.
    A testator directed that the income of certain property should be paid to a nephew for life; that at his death the principal should be paid to any responsible corporation existing at that time in New York city whose permanent fund is established by its charter for the purpose of ameliorating the condition of the Jews in Jerusalem; that in default of such society the money should go to certain relatives. The testator was one of the founders of such a society, which was in existence at the death of the nephew. No other society claimed the money. *Held,* that the bequest was not void for uncertainty, and that the society was entitled to the property.

2. CHARITIES—CHARITABLE SOCIETIES—RIGHT TO INVEST DONATIONS—LAWS 1848, CH. 319.
    A society, incorporated for benevolent and charitable purposes, under Laws 1848, c. 319, can invest the principal sum of the gifts it may receive, and devote the income to the purposes of its organization, as there is no prohibition contained in said act.

3. SAME—NORTH AMERICAN RELIEF SOCIETY FOR INDIGENT JEWS IN JERUSALEM.
    The charter of the North American Relief Society for the Indigent Jews in Jerusalem contains by implication power to ameliorate their condition by the contribution of money for the purposes of education, and hence it can take money left it by will for that purpose.

Appeal from special term, New York county.

Action brought by John H. Riker, as sole surviving executor of the will of Sampson Simson, against Sampson Simson Leo and the North American Relief Society for the Indigent Jews of Jerusalem, Palestine, to construe a will, and determine to whom he should pay a certain legacy. The court found in favor of the North American Relief Society, and from the judgment entered thereon, Sampson Simson Leo appealed.

Argued before VAN BRUNT, P. J., and MACOMBER and BARTLETT, JJ.

*John E. Parsons,* for appellant. *A. L. Sanger,* for respondent North American Relief Society.

BARTLETT, J. This action involves the construction and validity of certain provisions in the will of Sampson Simson, deceased, who died in the city of New York on the 7th day of January, 1857. By the fourth clause of that instrument the testator directed his executors to invest $50,000, and apply the interest on that amount to the support, maintenance, and comfort of his

nephew, Moses A. Isaacks, during his natural life. The fifth article of the will is as follows: "Upon the death of my said nephew, Moses A. Isaacks, I authorize and direct my acting executors, the survivors and survivor of them, to pay the said principal sum of fifty thousand dollars to any responsible corporation in this city, existing at the time of the death of my said nephew, whose permanent fund is established by its charter for the purpose of ameliorating the condition of the Jews in Jerusalem, Palestine. And I desire such corporation annually to transmit the interest received on said fifty thousand dollars to Jerusalem, Palestine, to ameliorate the condition of the Jews living there, by promoting among them education, arts, and sciences, and by learning them mechanical and agricultural vocations. Should no such corporation exist in this city at the death of my said nephew, and my said acting executors, the survivors and survivor of them, shall be satisfied that my intention to ameliorate the condition of the Jews can be accomplished through the instrumentality of the officers of the Jews' Hospital in Jerusalem, Palestine, or of any other corporation or trust company consenting to receive the said principal sum and apply its interest in accordance with my intentions above expressed, then I authorize and direct my said acting executors, the survivors and survivor of them, to pay over the said principal sum of fifty thousand dollars, to such officers, corporation, or trust company as my said executors shall deem best adapted to promote my object." The will further provided that in case the foregoing disposition of the $50,000 should fail, the said sum should go equally to the children of his niece, Jochebed M. Simson Leo, living at the death of his nephew, Moses A. Isaacks, and to the issue of any of her deceased children. The nephew, Moses A. Isaacks, is dead. The trust for his benefit having been terminated by his death, the principal fund is now claimed on the one hand by the American Relief Society for the Indigent Jews in Jerusalem, and on the other by Sampson Simson Leo, as the only child of the testator's niece, Jochebed M. Simson Leo, and hence entitled to the $50,000 under the bequest to her children, conditioned upon the failure of those provisions of the will designed for the benefit of the Jews in the Holy Land. The court below, with some hesitation, has decided in favor of the corporation.

It can hardly be doubted that the American Relief Society for the Indigent Jews in Jerusalem is such a corporation as the testator had in mind when he prepared the fifth article of his will. He was one of the incorporators of that society, and must have known that the certificate of incorporation which he signed declared its business, purpose, and object to be "to establish a permanent fund, the interest of which shall be annually applied to the relief of the indigent Jews in Jerusalem, Palestine." The language of the will is so much like this that the resemblance can scarcely have been accidental. It is true, the will speaks of ameliorating, instead of relieving, the condition of the Jews in Jerusalem, and does not refer to them as indigent, but these differences seem to me of no great import. The American Relief Society appears to be the only existing corporation of the character indicated in the will, and no other institution has come forward claiming this fund. The learned trial judge has found that Mr. Simson did not by his will intend to give the $50,-000 in question to this particular society, but that he meant to give it to any corporation which should answer the description contained in his will, and which should be in existence at the time of his nephew's death, provided such disposition could legally take effect; and upon this interpretation of the testator's meaning the appellant insists that the bequest is bad for uncertainty. The court below held that, while it would be void if there were in fact more than one corporation which could lawfully claim the fund, the gift could be sustained in view of the actual existence of but one society capable of becoming the donee at the time fixed by the terms of the will. I think the bequest in this case is sufficiently definite to be upheld under the authority of *Power*

v. *Cassidy*, 79 N. Y. 602. There the property was bequeathed to the executors of the testator "to be divided by them among such Roman Catholic charities, institutions, schools, or churches in the city of New York" as a majority of the executors should decide, and in such proportions as they should deem proper; and the gift was adjudged valid. Here the will does not expressly empower the executors to pay to any corporation of the prescribed character which they may select or designate, but the language of the bequest, considered in the light of the context, clearly implies that they are to exercise such power of selection or designation, in case there should be more than one corporation capable of taking. The class of beneficiaries which this testator had in contemplation was much smaller, and was defined with much more particularity, than the class mentioned in the will which came before the court in *Power* v. *Cassidy*, *supra*. The organizations which fell within the purview of the testamentary disposition could be ascertained without the slightest difficulty; and, indeed, no exercise of choice on the part of the executors is necessary, inasmuch as at the time when they are called upon to act there is but a single corporation in existence which can be a recipient of the testator's bounty. It is urged in behalf of the appellant, however, that Mr. Simson could not have intended the description in his will to apply to the North American Relief Society, to which he might have given the legacy specifically, if he had so desired. But I do not think he meant to exclude this society from becoming the beneficiary. It had been organized on February 14, 1853, and was therefore less than four years old at the time the will was executed. The testator might well doubt whether at the end of the 10, 20, or 30 years that would very probably elapse before his gift over could take effect this corporation would still exist as a responsible institution carrying on its work. There is nothing in his will, however, to indicate a wish that it should not be the donee, if then in existence, and responsible.

It has already been pointed out that by the terms of its charter, the purpose of the North American Relief Society is to establish a permanent fund, the interest of which shall be applied annually to the relief of the indigent Jews in Jerusalem. The appellant contends that the statute under which the society was incorporated (Laws 1848, c. 319) does not authorize the formation of a corporation to establish a permanent fund. I find no provision in the act, however, which prohibits a corporation formed thereunder from preserving intact the principal amounts of such gifts as it may receive, and devoting only the interest to the charitable or benevolent objects it is designed to promote; and chapter 428 of the Laws of 1881 expressly empowers benevolent and charitable corporations to retain and hold as investments any specific property, real or personal, donated to them.

The further suggestion is made that the North American Relief Society does not meet the requirements of the will, because it is not expressly authorized by its charter "to ameliorate the condition of the Jews living in Jerusalem, by promoting among them education, arts, and sciences, and by learning (teaching) them mechanical and agricultural vocations." As to this point, it is to be noted that the will merely expresses a desire, but does not impose a condition, that the interest on the principal fund shall be used in the particular modes specified. The charter of the North American Relief Society implies authority to relieve the Jews in Jerusalem by the promotion of education among them, as well as by other methods; for the right to afford relief to the indigent Jews of that city includes not only the power to bestow alms upon them, but the power to better their condition by the contribution of money to educational purposes for their benefit. It is argued that the relief of the indigent is charitable work, while the promotion of education is a work of benevolence; but this distinction can hardly be admitted here, for it is evident that those who organized the North American Relief Society used the term "relief" in a sense broad enough to comprise works of benevolence as well as

works of charity. According to the certificate of incorporation, they associated themselves "into a benevolent and charitable society," instead of organizing as a charitable society only.

The court below correctly decided that the objections urged to the claim of the North American Relief Society were untenable, and the judgment appealed from should be affirmed, with costs.

VAN BRUNT, P. J., and MACOMBER, J., concur.